IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

THE CHEROKEE NATION,                  )
                                      )
                 Plaintiff,           )
                                      )
v.                                    )    Case No. 09-CV-52-TCK-PJC
                                      )
(1) RAYMOND NASH,                     )
(2) LARRY WASSON,                     )
(3) ROBERT ALLEN,                     )
(4) KATHY WASHINGTON,                 )
(5) LISA DUKE,                        )
(6) KEN SALAZAR, SECRETARY            )
OF THE INTERIOR, AND                  )
(7) THE UNITED STATES                 )
DEPARTMENT OF THE INTERIOR,           )
                                      )
                 Defendants.          )

OPINION AND ORDER

Before the Court are Defendants Ken Salazar and the United States Department of the

Interior's Motion to Transfer Venue and to Suspend Obligation to Answer, or in the Alternative to

Stay (Docs. 18 and 22); and Motion of the Cherokee Freedmen to Transfer Or, in the Alternative,

Stay (Doc. 20).  In these motions, Defendants move to transfer this action to the District Court for

the District of Columbia ("D.D.C."), where the action of *Vann v. Salazar*, 1:03CV-1711-HHK, is

currently pending ("D.C. Action") before the Honorable Henry H. Kennedy ("Judge Kennedy").

I.      **Factual Background**

On August 11, 2003, six individual plaintiffs filed suit against the Secretary of the United

States Department of the Interior ("Secretary") and the United States Department of the Interior

("DOI") in the D.C. Action.[1]  The relief sought in the D.C. Action, as well as relevant background

---

[1]  The Secretary and DOI are collectively referred to as "Federal Defendants" in the D.C.
Action and this action.

facts, are comprehensively set forth in *Vann v. Kempthorne*, 467 F. Supp. 2d 56 (D.D.C. 2006) ("*Vann I*"), and *Vann v. Kempthorne*, 534 F.3d 741, 756 (D.C. Cir. 2008) ("*Vann II*"), and will not be repeated at length here.  Essentially, the plaintiffs in the D.C. Action are descendants of persons listed on the "Freedmen Roll" of the Cherokee Nation. *Vann II*, 534 F.2d at 744. The Freedmen Roll was completed in 1907 after Congress directed the Dawes Commission to create membership rolls for the Five Civilized Tribes of Oklahoma, which included the Cherokee Nation.  *Id.*  As explained by the Court of Appeals for the District of Columbia Circuit ("D.C. Circuit"), "[t]he rolls for the Cherokees were completed in 1907 and resulted in two lists: a 'Blood Roll' for native Cherokees and a 'Freedmen Roll' for former slaves [that had been owned by the Cherokee Nation] and their descendants." *Id.*  In the D.C. Action, the plaintiffs allege "they were not permitted to vote in two tribal elections because they lack an ancestral link to the Blood Roll." *Id.*[2]  The plaintiffs in the D.C. Action sued the Secretary and the DOI under the federal Administrative Procedure Act ("APA"), "alleging that their exclusion from the tribal elections, and the Secretary's recognition of those elections, violated the Thirteenth Amendment, the Fifteenth Amendment, the Cherokee constitution, the 1866 Treaty,[3] the Principal Chiefs Act, and the Indian Civil Rights Act." *Id.* at 745 (footnote added).  The plaintiffs sought a declaration that the Secretary acted "arbitrarily and capriciously," *see* 5 U.S.C. § 706(2)(A), in recognizing the 2003 Elections and sought to enjoin the Secretary from recognizing the results of the 2003 Elections or any future elections from which the plaintiffs were excluded.  *Id.*

---

[2]  Such elections are referred to herein as the "2003 Elections."

[3]  The United States and the Cherokee Nation entered into this treaty in 1866 after the Cherokee Nation voluntarily abolished slavery in 1863 ("1866 Treaty").

On January 14, 2005, The Cherokee Nation ("Cherokee Nation") moved to intervene in the D.C. Action for the limited purpose of asserting that (1) it was a necessary party pursuant to Federal Rule of Civil Procedure 19(a) ("Rule 19"); (2) it could not feasibly be joined because the Cherokee Nation's sovereign immunity barred its joinder; and (3) the entire D.C. Action should be dismissed pursuant to Rule 19(b), which provides that "[i]f a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."[4]   The Cherokee Nation alternatively argued, in its motion to dismiss, that the Secretary had not yet performed a "final agency action" and that the APA issue was not ripe.  The plaintiffs subsequently moved to amend their complaint to add the Cherokee Nation, the Chief of the Cherokee Nation Chadwick Smith ("Chief Smith"), and other tribal officials as defendants in the D.C. Action.

On December 19, 2006, with respect to the Cherokee Nation's motion to dismiss, Judge Kennedy held: (1) the Cherokee Nation was a necessary party that must be joined if feasible; (2) the Cherokee Nation could be joined because Congress, in the 1866 Treaty and the Thirteenth Amendment, "unequivocally indicated its intent to abrogate the tribe's immunity with regard to racial oppression prohibited by the Thirteenth Amendment"; and (3) the Secretary's decision to recognize the leaders elected in the 2003 Elections constituted a final agency action for purposes of the APA.  *Vann I*, 467 F. Supp. 2d at 65-72.  With respect to the plaintiffs' motion to amend, Judge

---

[4]  The factors for a court to consider pursuant to Rule 19(b) include "(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder."  Fed. R. Civ. P. 19(b)(1)-(4).

Kennedy held: (1) the plaintiffs need not exhaust tribal remedies prior to naming the proposed defendants; and (2) tribal officials are not shielded by sovereign immunity because (a) the Cherokee Nation's immunity was abrogated by Congress, and (b) alternatively, tribal officials are amenable to suit under the *Ex parte Young*[5] doctrine. *Id.* at 72-74. The Cherokee Nation and tribal officials filed an interlocutory appeal of Judge Kennedy's denial of their asserted sovereign immunity from suit.

On July 17, 2007, while the appeal was pending, the plaintiffs filed a Third Amended Complaint, adding the Freedmen Band of the Cherokee Nation of Oklahoma ("Freedmen Band")[6] as a plaintiff to the D.C. Action.[7] On July 29, 2008, the D.C. Circuit reversed Judge Kennedy's holding that the Cherokee Nation was amenable to suit, reasoning that Congress had not unequivocally abrogated the Cherokee Nation's immunity in either the text of the Thirteenth Amendment or the 1866 Treaty. *Vann II*, 534 F.3d at 748-49. The court found, however, that tribal officials, including Chief Smith, were amenable to suit pursuant to the *Ex parte Young* doctrine. *Id.* at 749-56. The court remanded with instructions that the "district court must determine whether 'in equity and good conscience' the suit can proceed with the Cherokee Nation's officers but without

---

[5] *Ex parte Young*, 209 U.S. 123 (1908).

[6] According to the current version of the complaint in the D.C. Action, which is the Fourth Amended Complaint, the Freedmen Band is "a political entity organized under a constitution and represented by leaders who as individuals can trace ancestry to the Cherokee Freedmen Dawes Rolls of 1906." (*See* Freedmen Defs.' Mot. to Transfer, Ex. B, at ¶ 11.)

[7] When necessary to distinguish between the individual plaintiffs and the organizational plaintiff in the D.C. Action, the Court refers to the individuals as "D.C. Individual Plaintiffs" and the organization as "Freedmen Band." Otherwise, the plaintiffs in the D.C. Action are collectively referred to as "D.C. Plaintiffs."

the Cherokee Nation itself" pursuant to Rule 19(b).  *Id.* at 756.  The court did not reach any other issues decided in *Vann I*.

Following remand, on December 19, 2008, the D.C. Plaintiffs filed a Fourth Amended Complaint in accordance with *Vann II*, naming only Federal Defendants and Chief Smith.  On January 30, 2009, Chief Smith filed a motion to dismiss the Fourth Amended Complaint, arguing: (1) the action should not proceed in the absence of the Cherokee Nation and should be dismissed pursuant to Rule 19(b); (2) there exists no private right of action upon which the plaintiffs can premise their claims, and the action should be dismissed pursuant to Rule 12(b)(6); and (3) the plaintiffs failed to allege facts establishing the court's venue over Chief Smith, and claims against him should be dismissed pursuant to Rule 12(b)(3).  (*See* Freedmen's Mot. to Transfer, Ex. C., at 1-2.)

Shortly after Chief Smith filed his motion to dismiss in the D.C. Action, on February 3, 2009, the Cherokee Nation filed this action in the Northern District of Oklahoma.  The Cherokee Nation filed a Complaint for Declaratory Relief against five individual Freedmen ("Freedmen Defendants"),[8] the Secretary, and DOI.  According to the Complaint, Freedmen Defendants are non-Indian descendants of former slaves of the Cherokee Nation who publicly claim rights as citizens of the Cherokee Nation pursuant to the 1866 Treaty.  The Cherokee Nation alleges, however, that the 1866 Treaty was modified by a subsequent act of Congress known as the Five Tribes Act, ch. 1876, §3, 34 Stat. 137 (1906) ("Five Tribes Act"):

> As a result of the U.S. Government's action in modifying the Treaty of 1866 by the
> Five Tribes Act, Freedmen not living in the Cherokee Nation before February 11,

---

[8] The five individual Freedmen Defendants in this case are different individuals than those comprising the D.C. Individual Plaintiffs.

1867, a Freedmen's descendant not living in the Cherokee Nation at that time did not possess any rights of native Cherokees conferred by the 1866 Treaty. Further, no child born of a citizen would be entitled to citizenship after that date.

(Compl. ¶ 12.)   The Cherokee Nation seeks a declaration that the "Five Tribes Act and federal statutes modified the Treaty of 1866 thereby resulting in non-Indian Freedmen descendants, including the individual defendants, no longer, as a matter of federal law, having rights to citizenship of the Cherokee Nation and benefits derived from such citizenship." (*Id.* ¶ 18.)

On February 6, 2009, in the D.C. Action, Chief Smith filed a supplement to his motion to dismiss the Fourth Amended Complaint, informing Judge Kennedy that the Cherokee Nation filed this action. Chief Smith argued that the pendency of this action was relevant to the fourth factor of the Rule 19(b) analysis, which is whether the plaintiff would have an adequate remedy if the D.C. Action were dismissed pursuant to Rule 19(b). (*See* Freedmen's Mot. to Transfer, Ex. I, at 2.)

On March 14, 2009, D.C. Plaintiffs moved for leave to file a Fifth Amended Complaint to re-name the Cherokee Nation as a defendant in the D.C. Action. D.C. Plaintiffs argued that, by filing the action before this Court, the Cherokee Nation "has abused its immunity privilege by attempting to invoke it for unfair tactical advantage, has therefore waived its immunity, and should be added to this action as a defendant." (*Id.*, Ex. J, at 1-2.) D.C. Plaintiffs further contended that "[b]y bringing its own suit in a federal forum seeking relief on the facts at the heart of this case, the Cherokee Nation has made a clear declaration of its intention to submit itself to federal jurisdiction and has thus waived its right to assert immunity with regard to the subject matter of this case – not only in the Oklahoma court, but in [the D.C. Action]." (*Id.*, Ex. J, at 6 (internal quotations omitted).)

On May 29, 2009, Federal Defendants and Freedmen Defendants filed the motions to transfer currently pending before this Court, requesting transfer of this action to the D.D.C. pursuant to (1)

6

the "first to file" rule ("first to file rule"); and (2) 28 U.S.C. § 1404(a) ("§ 1404(a)").[9]  Alternatively, Federal Defendants and Freedmen Defendants move the Court to stay this action pending resolution of all proceedings or certain relevant proceedings in the D.C. Action, pursuant to the first to file rule. The Cherokee Nation filed one combined response to both motions.

On June 18, 2009, Freedmen Defendants filed their Amended Answer, Counterclaims Against the Cherokee Nation of Oklahoma, and Cross-Claims Against Federal Defendants.  (*See* Doc. 31.)  In their counterclaims, Freedmen Defendants allege that the Cherokee Nation violated various treaties, tribal laws, and federal laws by implementing policies denying Freedmen the right to vote and perpetuating badges of slavery.  They seek numerous forms of declaratory and injunctive relief, including a declaration of Freedmen Defendants' rights under the 1866 Treaty and other laws, and an injunction enjoining the Cherokee Nation from holding any further elections until all Freedmen are entitled to vote.  (*See id.* ¶¶ 21, 91-114.)  In their cross-claims, Freedmen Defendants allege five causes of action against Federal Defendants, including violations of the APA, and ultimately seek a declaration that Federal Defendants may not approve any election or other act by the Cherokee Nation that violates Freedmen Defendants' rights as Cherokee citizens.  (*See id.* ¶¶ 22, 115-150.)  The Court granted the Cherokee Nation's and the Federal Defendants' motions to stay their deadlines to file a responsive pleading to Freedmen Defendants' counterclaims and cross-claims until following the Court's rulings on the motions to transfer or stay.

---

[9]  Freedmen Defendants principally relied on the first to file rule as grounds for transfer and relied on § 1404(a) in the alternative.  In contrast, Federal Defendants principally relied on § 1404(a) and relied on the first to file rule in the alternative.  For reasons explained below, the Court transfers this case to the D.D.C. pursuant to the discretionary first to file rule and does not reach the issue of whether § 1404(a)'s requirements are met.

On June 10, 2010, the Court ordered Federal Defendants to provide a Status Report of any relevant events or orders in the D.C. Action occurring since May 29, 2009.  According to such report, there have been no relevant events in the D.C. Action.  (*See* Doc. 47.)  Thus, Judge Kennedy has not decided whether the Cherokee Nation may be re-named as a defendant in the D.C. Action based on the Cherokee Nation's filing of this action; whether the D.C. Action may, in equity and good conscience, proceed in the absence of the Cherokee Nation; or whether venue is proper in the D.D.C. over Chief Smith.

## II.     Motions to Transfer Or, Alternatively, Stay Pursuant to the First to File Rule

### A.     General Principles of First to File Rule

The Tenth Circuit generally follows the first to file rule.  *See Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1163 (10th Cir. 1982) (explaining "general rule that when two courts have concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case"); *O'Hare Int'l Bank v. Lambert*, 459 F.2d 328, 331 (10th Cir. 1972) ("It is well established in this Circuit that where the jurisdiction of a federal district court has first attached, that right cannot be arrested or taken away by proceedings in another federal district court.") (holding that district court erred by denying motion to stay second-filed action until conclusion of first-filed action); *Cessna Aircraft Co. v. Brown*, 348 F.2d 689, 692 (10th Cir. 1965) ("The rule is that the first federal district court which obtains jurisdiction of parties and issues should have priority and the second court should decline consideration of the action until the proceedings before the first court are terminated."); *Buzas Baseball, Inc. v. Bd. of Regents of Univ. Sys. of Ga.*, No. 98-4098, 1999 WL 682883, at *2 (10th Cir. Sept. 2, 1999) (unpublished) ("Federal courts have recognized that, as courts of coordinate jurisdiction and equal rank, they must be careful to avoid interfering with each

other's affairs in order to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result.  To aid in achieving this goal, the 'first-to-file' rule permits a district court to decline jurisdiction where a complaint raising the same issues against the same parties has previously been filed in another district court.") (internal quotations and citations omitted).  However, the Tenth Circuit has not provided a comprehensive explanation of the doctrine or its exceptions.  Courts within the Tenth Circuit have discussed and applied the first to file in various situations.  *See, e.g., Shannon's Rainbow, LLC v. Supernova Media, Inc.*, 683 F. Supp. 2d 1261, 1279 (D. Utah 2010) (applying first to file rule in case involving similar parties and issues and enjoining defendants from pursuing any further action in second-filed case pending in New York); *Ed Tobergte Assocs., Inc. v. Zide Sport Shop of Ohio, Inc.*, 83 F. Supp. 2d 1197, 1199 (D. Kan. 1999) (applying first to file rule and staying its proceedings in deference to first-filed case pending in Ohio that presented substantially similar issues) (reasoning that judicial economy was served by stay because one court would "decide the duplicative issues of venue, interpretation of the contractual provisions for jurisdiction and venue, and the allegations of bad faith and inequitable conduct" against certain defendants).

The Fifth Circuit has provided a comprehensive explanation of the first to file rule.  *See Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999); *see also* Michael Cicero, *First-to-File and Choice-of-Forum Roots Run Too Deep for Micron to Curb Most Races to the Courthouse*, 90 J. Pat. & Trademark Off. Soc'y 547, 560 (2008) [hereinafter "Cicero"] (citing *Cadle*

as leading case on first to file rule).[10]  According to the Fifth Circuit, "[u]nder the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Cadle*, 174 F.3d at 603. "The rule rests on principles of comity and sound judicial administration." *Id.*  "The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *Id.* (internal quotations omitted).  Courts utilize the first to file rule "to maximize judicial economy and minimize embarrassing inconsistencies by prophylactically refusing to hear a case raising issues that might substantially duplicate those raised by a case pending in another court." *Id.* at 604. The first to file rule is a "discretionary doctrine," and a lower court's decision to apply the first to file rule is reviewed for an abuse of discretion. *Id.* at 603.

The general rule of deference to a first-filed court presented with substantially overlapping parties and issues is not "an invariable mandate." *Employers Ins. of Wausau v. Fox Entertainment Group, Inc.*, 522 F.3d 271, 276 (2d Cir. 2008). "The inquiry still requires selection of the more appropriate forum, since the first-filed rule is *only a presumption* that may be rebutted by proof of the desirability of proceeding in the forum of the second-filed action." *Id.* (internal quotations omitted).  Indeed, there are recognized exceptions to the first to file rule, which must be proved by the second-filing party. *Id.*  For example, the Second Circuit has recognized two exceptions:  (1) where the balance of convenience favors the second-filed action, and (2) where *special*

---

[10]  This article addresses the impact of the Federal Circuit's decision in *Micron Technology, Inc. v. MOSAID Technologies, Inc.*, 518 F.3d 897 (Fed. Cir. 2008), on the first to file rule as applied to patent infringement actions and concludes that *Micron* will not radically alter the first to file rule in such cases. *See id.* at 549-50.  This Court utilized the article primarily for its discussion of general background principles of the first to file rule.  *See id.* at 550-564.

*circumstances* warrant giving priority to the second suit, such as where a first-filing party engages in forum shopping or anticipatory filing. *Id.* at 275-76 (internal quotations and citations omitted).[11] If any exceptions apply, a court may, in its discretion, "dispense with the first-filed principle for reasons of equity" and allow the second-filed case to proceed in the second-filed forum. *See Alltrade, Inc.*, 946 F.2d at 628.

B.   Second-Filed Court's Role

In *Cadle*, the Fifth Circuit indicated that a second-filed court plays a limited role when presented with a motion to transfer or stay based on the first to file rule. *See Cadle*, 174 F.3d at 605. This role is to decide whether the moving party in the second-filed court has demonstrated a "substantial overlap" between the two suits. *Id.* If the moving party satisfies this overlap requirement, the second-filed court allows the first-filed court to "resolve the question of whether both [cases] should be allowed to proceed." *Id.* (internal quotations omitted) (explaining that first-filed court performs the "balancing act" in deciding how to maximize judicial economy between two suits and that, by playing a limited role, the second-filed court avoids "entrenching on the authority of its sister court").

The Tenth Circuit has not expressly spoken on the role of the second-filed court when presented with a motion to transfer pursuant to the first to file rule. District courts within the Tenth Circuit have stated that "the preference is for the court of first-filing to decide the application of the

_____

[11]   The Cherokee Nation relies upon the "special circumstances" exception identified in *Employers Insurance of Wausau*, which is why the Court focused on Second Circuit law setting forth exceptions. Other courts are substantially in accord as to the relevant exceptions. *See, e.g., Alltrade, Inc. v. Uniweld Products*, Inc., 946 F.2d 622, 628 (9th Cir. 1991) ("The circumstances under which an exception to the first-to-file rule typically will be made include bad faith, anticipatory suit, and forum shopping.") (internal citations omitted).

first to file rule." *See Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 679 F. Supp. 2d 1287, 1296 (D. Kan. 2010) (explaining general preference for first-filed court to decide where second-filed case will proceed, but finding that the second court may exercise its discretion to enforce (or decline to enforce) the first to file rule in the first instance); *Johnson v. Pfizer, Inc.*, No. 04-1178, 2004 WL 2898076, at *2 (D. Kan. 2004) (unpublished) (explaining that "[a]pplication of these or any other exception [to the first to file rule] is usually left to the first-filed court" and that "[l]ikewise, any jurisdictional defects, or objections to venue would be decided by that court"); *see also Ed Tobergte Assocs., Inc.*, 83 F. Supp. 2d at 1199 (explaining that, when second-filed court is presented with motion to stay or transfer pursuant to the first to file rule, "[t]he immediate question before the court is not whether jurisdiction and venue are proper in the [second-filed case] or the [first-filed case], but which court should decide those issues").

Second-filed courts in other jurisdictions have also expressed a general preference for deferring to first-filed courts for deciding where the second case should proceed. *See Daimler-Chrysler Corp. v. General Motors Corp.*, 133 F. Supp. 2d 1041, 1044 (N.D. Ohio 2001) ("It is more appropriate, as a matter of judicial comity, for the court of first filing to determine whether to retain or relinquish jurisdiction, rather than leave it to the court of later filing to make that decision."); Cicero, 90 J. Pat. & Trademark Off. Soc'y at 561-62 (explaining that courts generally "grant forms of relief deferring to the first-filed court to determine the fate of the second-filed action" and that the first to file rule functions as a "traffic regulator" dictating "which forum would decide the fate of the second-filed case").  This general rule of deference includes deferring to first-filed courts for the application of any equitable exceptions to the first to file rule, once the second-filed court has determined that there is a sufficient overlap between the two cases. *See id.* at 561-62 (explaining

12

that the "first-filed court decides not only venue issues generally [such as convenience factors presented by § 1404(a) motions], but also specifically whether the second-filer sustained its burden to establish exceptions to the [first to file rule]."") (citing cases); *id.* at 563 (explaining flow chart attached to article and stating that "most courts require that analysis of [first to file rule] exceptions occur in the first-filed courts").  *But see Sotheby's, Inc. v. Garcia*, 802 F. Supp. 1058, 1065-66 (S.D.N.Y. 1992) (second-filed court deciding that movant had demonstrated "special circumstances" exception to the first to file rule and enjoining proceedings in first-filed court).

Based on the above law, the Court concludes that: (1) a second-filed court presented with a motion to transfer or stay pursuant to the first to file rule must make the initial determination of whether the first to file rule *generally* applies, *i.e.*, whether there is sufficient overlap of parties and issues between the two cases; (2) if the second filer argues for application of an equitable exception to the first to file rule, a second-filed court within the Tenth Circuit has discretion to either (a) allow the first-filed court to decide whether an exception applies, or (b) decide for itself whether an exception applies; and (3) there is a preference for allowing the first-filed court to decide whether an exception applies.

###### C.   Does First to File Rule Generally Apply?

As an initial matter, the Court must determine if movants Freedmen Defendants and Federal Defendants have shown that the first to file rule generally applies.  This requires analysis of three considerations: (1) the chronology of actions; (2) the similarity of parties, and (3) the similarity of issues.  *See Shannon's Rainbow, LLC*, 683 F. Supp. 2d at 1278 (citing *Alltrade, Inc.*, 946 F.2d at 625); *Wallace B. Roderick Revocable Living Trust*, 679 F. Supp. 2d at 1296 ("In determining whether the first-to-file rule applies, the court should examine the chronology of the actions, the

13

similarity of the parties involved, and the similarity of the issues at stake."). It is well accepted that "the parties do not need to be identical" and that "[o]nly similarity or substantial overlap is required." *Shannon's Rainbow, LLC*, 683 F. Supp. at 1278-79 (internal quotations omitted) (citing cases). "Similarly, the issues must only be substantially similar in that they seek like forms of relief and hinge on the outcome of the same legal/factual issues." *Id.* at 1279; *Wallace B. Roderick Revocable Living Trust*, 679 F. Supp. 2d at 1298 (explaining that "the first-to-file rule does not require identity of claims").

        1.    *Chronology of Actions*

The D.C. Action was filed in 2003, and this action was filed in 2009. Nonetheless, the Cherokee Nation argues that this action should be considered the "first filed" action because the "[t]he D.C. Court never acquired jurisdiction of the Cherokee Nation." (Pl.'s Resp. to Mot. to Transfer 15.) According to the Cherokee Nation, the case before this Court was the "first, and only to acquire jurisdiction over all the parties to the 1866 Treaty as modified by statute," and therefore the first to file rule should "not operate to divest this Court of its jurisdiction over this action." (*Id.*) In essence, the Cherokee Nation argues that this case should be considered the "first-filed" action because the first-filed court currently lacks jurisdiction over it.[12]

This argument misses the mark for two reasons. First, as explained below, the parties need not be identical in order to transfer pursuant to the first to file rule. The inquiry is whether there is

---

[12] The Cherokee Nation's argument that this case should be considered the "first filed" action consisted of only one paragraph and was confusingly positioned between two other paragraphs discussing equitable "exceptions" to the first to file rule. (*See* Pl.'s Resp. to Mot. to Transfer 15.) Based on the Court's understanding of this argument, it is best addressed as a challenge to general application of the first to file rule, rather than an exception. Therefore, the Court has treated the argument in the "chronology of actions" analysis.

a substantial overlap between the parties and issues, and the overarching goal is to avoid inconsistent rulings between the two cases. Therefore, the Cherokee Nation's current absence from the D.C. Action does not mandate a finding that this was the "first-filed" action between the two cases.

Second, this Court need not address the D.C. Action's jurisdiction, or lack thereof, before taking action pursuant to the first to file rule. *See Cadle*, 174 F.3d at 603 (party seeking to avoid application of the first to file rule argued that rule did not apply because first-filed court "never had jurisdiction over the claims") (rejecting argument that the first to file rule includes a "precondition that requires the district court to find proper jurisdiction in the first-filed court before applying the rule at all"). The *Cadle* court explained that such a requirement would undercut the "values of economy, consistency, and comity that the rule is designed to maximize" because any "jurisdictional ruling of the second-filed court would either conflict with a ruling already made, rehash an issue already decided, or trench on a sister court's treatment of the issue before it has been reached there." *Id.* at 604. In this case, were the Court to preclude application of the first to file rule based on the D.D.C.'s lack of jurisdiction over the Cherokee Nation, it would be both (1) "rehashing" the D.C. Circuit's ruling regarding the Cherokee Nation's immunity, and (2) "trenching" on motions currently pending before Judge Kennedy regarding whether the Cherokee Nation has waived its immunity and may indeed be re-named as a defendant in the D.C. Action. The Court need not decide or pass upon jurisdictional issues present in the D.C. Action prior to application of the first to file rule, and it declines to do so.[13]

---

[13] The Court acknowledges general statements in Tenth Circuit law that "the first federal district court *which obtains jurisdiction* of parties and issues should have priority and the second court should decline consideration of the action until the proceedings before the first court are terminated." *Cessna Aircraft Co.,* 348 F.2d at 692 (emphasis added). However, the Court does not interpret such statements as requiring the second-filed court to conduct a full-fledged

2. *Similarity of Parties*

In its current procedural posture,[14] the D.C. Plaintiffs are: (1) D.C. Individual Plaintiffs, consisting of eight individual Freedmen; and (2) Freedmen Band, a political entity representing the interests of Freedmen.   D.C. Defendants are: (1) Secretary; (2) DOI; and (3) Chief Smith, individually and in his official capacity. The sole plaintiff in this action is the Cherokee Nation, a non-party to the D.C. Action.   The defendants in this action are: (1) Secretary; (2) DOI; and (3) Freedmen Defendants, consisting of five individual Freedmen, all of whom are members of Freedmen Band but none of whom are also D.C. Individual Plaintiffs.   The common parties in both actions are the Secretary and DOI.   The question is whether the remaining parties are "substantially similar."

The Court concludes that D.C. Individual Plaintiffs are substantially similar to Freedmen Defendants in this case because they are all representative Freedmen who desire a certain status within the Cherokee Nation.   Further, the D.C. Individual Plaintiffs and Freedmen Defendants are represented by the same counsel.   For purposes of deciding the questions presented in both lawsuits, it makes little difference which individual Freedmen are parties.   D.C. Individual Plaintiffs are simply other Freedmen asserting rights contrary to the declaratory relief sought by the Cherokee Nation in this case, and they could be readily substituted as the defendants in this case without effecting any substantive change in the declaratory action.   In addition, the presence of Freedmen

jurisdictional analysis of all parties present in both actions prior to taking any action pursuant to the first to file rule.   In this case, the D.D.C. currently has jurisdiction over similar parties and similar issues, and this is sufficient for a transfer pursuant to the first to file rule.

[14] There are pending motions in the D.C. Action that may impact the identity of parties in that case.

16

Band as a plaintiff in the D.C. Action renders the parties in the two suits even more similar because all Freedmen Defendants are members of this political organization, as evidenced by the uncontroverted affidavits of Freedmen Defendants. (*See* Freedmen's Mot. to Transfer, at Exs. N-Q; Freedmen's Resp. to Mot. to Intervene, at Ex. I.)

The Court further concludes that Chief Smith is "substantially similar" to the Cherokee Nation for purposes of the first to file rule. Chief Smith and Cherokee Nation are represented by the same counsel in both suits, and the Court has no reason to believe Chief Smith has any conflicting interests with the Cherokee Nation. In other words, Chief Smith's position in the D.C. Action with respect to Freedmen's status and rights under the 1866 Treaty is identical to the Cherokee Nation's position asserted in this declaratory judgment action. There is of course one glaring difference between the Cherokee Nation and Chief Smith – the Cherokee Nation is, at least as of the time of this Order, immune from suit in the D.C. Action while Chief Smith is not. However, the Cherokee Nation's immunity is not particularly relevant in analyzing the *similarity of parties* between the two actions for purposes of the first to file rule. Because the Cherokee Nation has waived its immunity in this case, it is similarly situated to its non-immune counterpart (Chief Smith) in the D.C. Action for purposes of prosecuting or defending the legal positions being asserted in each case.

3.      *Similarity of Issues*

With respect to the issues presented in each suit, Federal Defendants contend that "both cases involve a single core merits issue – whether the Treaty of 1866 guarantees the Cherokee Freedmen certain rights within the Cherokee Nation." (Fed. Defs.' Mot. to Transfer 12.) Similarly, Freedmen Defendants argue:

> The core legal issue raised by the Cherokee Nation in [this action] – whether the Cherokee Nation remains bound by the 1866 Treaty to accord its Freedmen full

17

> citizenship rights – is at the heart of the D.C. Action.  In fact . . . Chief Smith has already suggested in the D.C. Action that [this action] provides a 'procedurally appropriate venue' for the concerned parties to resolve the issues presented in the D.C. Action.  The converse is even more true because the D.C. Action is broader than [this action] and certainly encompasses [it].

(Freedmen's Mot. to Transfer 9.)  Freedmen Defendants are referring to Chief Smith's "supplement"

to his motion to dismiss in the D.C. Action, wherein he argues that the pendency of this action is

relevant to the fourth factor of his Rule 19(b) motion.  Specifically, Chief Smith argued:

> Because the Northern District of Oklahoma action will proceed pursuant to a waiver of sovereign immunity both as to that Court and the legal effect of the 1866 Treaty and subsequent federal statutes on non-Indian Freedmen descendants' claim to citizenship of the Cherokee Nation, and because the United States through the Secretary and the Department of the Interior are parties, *the Plaintiffs here have an existing forum to fully contest the present effect of the 1866 Treaty and subsequent federal statute on them, if they choose to avail themselves of the opportunity.*

(Freedmen's Mot. to Transfer, Ex. I, at 2 (emphasis added).)

Thus, the Cherokee Nation has conceded in the D.C. Action that there is a substantial overlap

of core issues and that D.C. Plaintiffs' claims in the D.C. Action would be proper counterclaims in

this action.  In addition, the Freedmen Defendants have asserted counterclaims in this case against

the Cherokee Nation that are nearly identical to those asserted by D.C. Individual Plaintiffs against

Chief Smith in the D.C. Action.  Based on these admissions by Chief Smith and review of pleadings

in both cases, the Court finds that there is a sufficient degree of overlap and similarity between the

issues presented in each case.  Both actions ultimately turn on interpretation of the 1866 Treaty and

subsequent congressional actions, and both cases seek a resolution to the question of whether

Freedmen are entitled to rights originally bestowed in the 1866 Treaty.

For the above-stated reasons, Federal Defendants and Freedmen Defendants have met their

initial burden of showing: (1) the D.C. Action was first filed; (2) there is sufficient similarity

between the current parties in this action and the D.C. Action; and (3) there is sufficient similarity

between the issues presented in this action and the D.C. Action.  Therefore, the Court concludes that

the first to file rule generally applies.

       D.        <u>"Special Circumstances" Exception</u>

       The Cherokee Nation's main argument against application of the first to file rule is that

"special circumstances" exist, such that this action should proceed here despite the pendency of the

D.C. Action.  Specifically, the Cherokee Nation argues that "[s]overeign immunity is one of those

special circumstances that warrants a departure from the first-filed rule here."  (Pl.'s Resp. to Mots.

to Transfer 12.)  The Cherokee Nation relies principally on two district court decisions in support

of its argument:  *Sotheby's Incorporated v. Garcia*, 802 F. Supp. 1058 (S.D.N.Y. 1992) (finding

"special circumstances" warranted giving priority to the second-filed suit because, *inter alia*, first-

filed suit did not include one of the defendants in the second-filed action; because such defendant

was not amenable to suit in first-filed court; and because first-filed court did not intend to resolve

issue of title relevant to the second-filed proceeding); and *MEI Technologies. v. Detector Networks

International*, Memorandum Opinion and Order, at * 6 (D.N.M. July 24, 2009) (not available on

electronic database) (attached as Ex. O to Pl.'s Resp. to Mots. to Transfer) (holding that party

"cannot circumvent a forum selection clause simply by filing a lawsuit in a different forum and then

asserting that the first-filed doctrine prevents a subsequent lawsuit in the proper forum").  The

Cherokee Nation analogizes the forum selection clause at issue in *MEI Technologies* to its sovereign

immunity.

       As explained above, a second-filed court may defer to the first-filed court to determine

whether the second action qualifies for any "exceptions" to the first to file rule, *see supra* Part II.B,

19

and the Court finds it proper to do so here.  In motions currently pending in the D.C. Action, D.C. Plaintiffs have argued that filing this action functions as a waiver of the Cherokee Nation's immunity in all federal forums, including in the D.C. Action.  Thus, the "special circumstances" argued by the Cherokee Nation in support of a first to file exception – its immunity in the first-filed forum – may become non-existent if Judge Kennedy decides that filing of this action functions as a waiver of immunity in the D.C. Action.  This issue is essentially whether the Cherokee Nation enjoys some type of "forum immunity" from suit, such that it may select not just whether it will allow adjudication of an issue against it but in what forum that issue must be adjudicated.  (*See* Pl.'s Resp. to Mots. to Transfer 10 (arguing that "a tribe can be sued in one particular federal court on a claim and be protected by sovereign immunity from the claim proceeding forward against it in that court, but can waive its sovereign immunity to litigate that very claim in a different federal court").)  The Cherokee Nation urges this Court to resolve that question prior to Judge Kennedy, grant a "special circumstances" exception to the first to file rule, and allow this case to proceed despite the existence of the D.C. Action.  However, the first to file "exception" question being argued before this Court is completely intertwined with similar legal issues that are also pending before the first-filed court.  Under these somewhat unique circumstances, the Court exercises its discretion to defer to the first-filed court to determine whether the Cherokee Nation's sovereign immunity from suit in the D.C. Action warrants an exception to the first to file rule.

      E.    <u>Transfer or Stay?</u>

After determining whether the first to file rule generally applies, courts within the Tenth Circuit have the option of staying the second-filed action pending the outcome of the first-filed action, rather than immediately transferring the case to the first-filed court.  *See, e.g.*, *Cessna*

*Aircraft Co.,* 348 F.2d at 692 (granting writ to stay second-filed cases until termination of related cases pending in another district); *Ed Tobergte Assocs., Inc.*, 83 F. Supp. 2d at 1199 (staying proceedings pending final termination of related proceedings in first-filed action).  In contrast, the Fifth Circuit has indicated that transfer is always the "proper course" because a second-filed court should allow a first-filed court to determine the fate of the second action.  *Cadle*, 174 F.3d at 606 (explaining that "[o]nce the district court found that the issues might substantially overlap, the proper course of action was for the court to transfer the case to the [first-filed court] to determine which case should, in the interests of sound judicial administration and judicial economy, proceed").

In this case, the Court concludes that transfer is superior to a stay.  First, this Court has exercised its discretion to defer to Judge Kennedy as to whether the Cherokee Nation can demonstrate an exception to the first to file rule.  A transfer more readily accomplishes this objective than a stay.  Second, Judge Kennedy is in the best position to determine where this second-filed action (1) legally must proceed, and/or (2) in the interests of justice should proceed.  This decision will be informed by relevant proceedings and rulings in the D.C. Action, and efficiency is advanced by having one judge decide the issues.  Judge Kennedy knows the history of the D.C. Action, is intimately familiar with all appellate rulings, and has pending before him several motions that will impact the overall appearance and posture of the D.C. Action.  Finally, the Court is not, as argued by the Cherokee Nation, depriving the Cherokee Nation of "the incidents of its sovereign immunity" by transferring this action pursuant to the first to file rule.  The Cherokee Nation voluntarily filed this action and waived its immunity from suit.  It did so while the D.C. Action was still pending.  A transfer to the D.D.C., for that court to decide the proper venue for this action, does not somehow

inject the Cherokee Nation as a party into the D.C. Action or otherwise deprive the Cherokee Nation of immunity asserted in the D.C. Action.  This Court is simply allowing the first-filed court, which has been dealing with these parties and issues since 2003, to decide the consequences of the Cherokee Nation's decision to file this case while the D.C. Action was still pending.  In short, for purposes of deciding whether this Court or Judge Kennedy should decide the proper venue for this action, the Cherokee Nation has presented no persuasive reason for ignoring the general rule of deference to the first-filed court.

By transferring this action pursuant to the first to file rule, the Court is not refusing to hear the merits, declining to hear the merits, or in any way indicating that it should not ultimately decide the merits.  Nor is the Court making any rulings as to which forum is legally proper and/or will better serve the interests of justice.  The Court is simply deferring to the first-filed forum to determine whether the related actions must and/or should proceed in the D.D.C., must and/or should proceed simultaneously in two different forums, must and/or should proceed in this Court, or some other formulation.  *See generally* Cicero, 90 J. Pat. & Trademark Off. Soc'y at 562 (explaining that first to file rule merely functions as a "traffic regulator" and that "cases transferred [to the first-filed forum] pursuant [to the first-filed rule] may be freely re-transferred under § 1404(a), provided that one satisfies the requisites for such re-transfer").  Oklahoma may indeed be the proper or more desirable forum for adjudication of this action; however, the Court will defer to Judge Kennedy on this question due to the long history of similar litigation before him and the general rule of deference to a first-filed court.

## III.    Conclusion

Federal Defendants and Freedmen Defendants have met their burden of showing that the first to file rule generally applies to this action and the D.C. Action.  Therefore, the Court exercises its discretion to transfer this action to the D.D.C. based on the first to file rule.[15]  The Court does not reach the question of whether the Cherokee Nation has demonstrated an equitable exception to the first to file rule, and this issue may be re-urged in the transferee court.

Federal Defendants and Freedmen Defendants' motions to transfer (Docs. 18 and 20) are GRANTED pursuant to the first to file rule.  This action is hereby TRANSFERRED to the District Court for the District of Columbia as related to the first-filed case of *Vann v. Salazar*, 1:03CV-1711-HHK.  Alternative requests to stay this action (Doc. 22) are DENIED as moot.  This Order starts the clock for the Cherokee Nation and Federal Defendants to answer or otherwise respond to Freedmen Defendants' counterclaims and cross-claims.  Cherokee Freedmen Class Representatives' Motion to Intervene (Doc. 8) remains pending.

**SO ORDERED** this 2nd day of July, 2010.

_Terence C Kern_
_____
**TERENCE C. KERN**
**United States District Judge**

---

[15]  The Court does not reach the question of whether transfer is proper pursuant to § 1404(a).  *See White v. Peco Foods, Inc.*, 546 F. Supp. 2d 339, 343 (S.D. Miss. 2008) ("Because the Plaintiff's action will be transferred under the first-to-file rule, the Court does not address, and expresses no opinion on, whether a transfer pursuant to § 1404(a) would be proper."); *see also* Cicero, 90 J. Pat. & Trademark Off. Soc'y at 562 (cautioning that "[c]ourts would do well to clearly articulate whether they are ordering a transfer pursuant to the [first to file rule] or, instead, § 1404(a)" due to different effects for purposes of appellate review).