**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| THE CHEROKEE NATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11-CV-648-TCK-TLW |
| ) | |
| RAYMOND NASH, et al. ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Before the Court is the Motion of the Cherokee Freedmen ("Freedmen Defendants") to Transfer Or, In the Alternative, To Stay (Doc. 178).

**I.      Background**

     **A.      Procedural History**

On July 2, 2010, the Court transferred *Cherokee Nation v. Nash, et. al.*, 09-CV-52-TCK ("Oklahoma action"), to the United States District Court for the District of Columbia ("D.C. Court") pursuant to the "first to file" rule. *See Cherokee Nation v. Nash*, 724 F. Supp. 2d 1159, 1168-72 (N.D. Okla. 2010) (holding that, due to similarity of parties and issues between the Oklahoma action and *Vann v. Salazar, et al.*, 03-1711-HHK ("D.C. action"), the D.C. Court should determine the proper forum for the Oklahoma action).[1]  The Court transferred the Oklahoma action because the

---

[1] *Nash* provides extensive background information and is incorporated herein by reference. In short, the D.C. action was filed by six individual descendants of persons listed on the "Freedmen Roll" of the Cherokee Nation ("Freedmen Plaintiffs") against the United States Department of the Interior. In 2008, on interlocutory appeal, the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") held that the Cherokee Nation was immune from suit and remanded for the district court to decide if, in equity and good conscience, the D.C. action could proceed in the Cherokee Nation's absence. While this question was being decided by the D.C. Court upon remand, the Cherokee Nation filed this action.

D.C. Court's resolution of certain legal questions already pending before it would inform, if not control, the decision of where the Oklahoma action should proceed.

On September 30, 2011, the D.C. Court resolved those legal questions. Specifically, the court held that dismissal of the D.C. action was proper under Federal Rule of Civil Procedure 19(b) because the court could not, in equity and good conscience, proceed without the Cherokee Nation as a party. *See Vann v. Salazar*, 883 F. Supp. 2d 44, 48-53 (D.D.C. 2011) ("*Vann III*"), *overruled by Vann v. United States Dep't of Interior* ("*Vann IV*"), 701 F.3d 927, 929-30 (D.C. Cir. 2012). The district court reasoned that any judgment rendered in absence of the Cherokee Nation would be inadequate because "only the Chief . . . would be bound by the judgment" and that the Northern District of Oklahoma was not only an "adequate alternative forum, but a superior one" based on the Cherokee Nation's presence in the lawsuit. *Id.* at 51-52. The D.C. Court denied as futile the Freedmen Plaintiffs' motion for leave to add the Cherokee Nation as a party, rejecting the argument that the Cherokee Nation waived immunity in the D.C. action by filing the Oklahoma action. *See id.* at 53-55 ("The [Cherokee Nation] is free to litigate these questions in the federal action of its choosing, or not at all."). Because the first-filed case was no longer pending, the court transferred the Oklahoma action back to this Court. The Freedmen Plaintiffs appealed dismissal of their claims to the D.C. Circuit.

Upon transfer, the Oklahoma action was reassigned Case No. 11-CV-468-TCK-TLW. On December 21, 2011, the Freedmen Defendants filed their first motion to stay, arguing that this Court should issue a stay for the same reasons it initially transferred the action. On February 1, 2012, the Court denied the motion to stay:

> The Court declines to stay these proceedings pursuant to the first to file rule or general discretionary principles authorizing a stay. In initially transferring this case, the Court desired to avoid taking any action in this litigation until the D.C. Court decided certain essential questions – namely, whether filing the Oklahoma action waived the Cherokee Nation's immunity in the D.C. action and whether the D.C. action would be dismissed due to the absence of the Cherokee Nation. The D.C. Court has decided such questions by declining to permit amendment and ultimately dismissing the case. While there exists some possibility that the D.C. Circuit Court of Appeals will reverse these rulings, this possibility is wholly speculative. In addition, this Court will not be entrenching upon the appellate court's decisions or duplicating its efforts. The appellate court will only be reaching jurisdictional issues, and this Court will be reaching the merits of the dispute. In short, the D.C. Court has now issued the rulings that this Court sought to avoid encroaching upon, and the Court finds that the Freedmen Defendants have failed to present a sufficient justification for any further stay of these proceedings.

(Doc. 101 (footnote omitted).)

On December 14, 2012, the D.C. Circuit reversed dismissal of the D.C. action and remanded it for further proceedings, holding that "the Cherokee Nation and the Principal Chief in his official capacity are one and the same in an *Ex parte Young* suit for declaratory and injunctive relief" and that "the Principal Chief can adequately represent the Cherokee Nation in this suit, meaning that the Cherokee Nation itself is not a required party for purposes of Rule 19." *Vann IV,* 701 F.3d at 929-30. The court reasoned:

> By contrast, if we accepted the Cherokee Nation's position, official-action suits against government officials would have to be routinely dismissed, at least absent some statutory exception to Rule 19, because the government entity in question would be a required party yet would be immune from suit and so could not be joined. But that is not how the *Ex parte Young* doctrine and Rule 19 case law has developed. . . . The claim here is that the Principal Chief – and through him, the sovereign tribe – is violating federal law. The defense is that the Principal Chief – and hence the sovereign tribe – is not violating federal law. This case presents a typical *Ex parte Young* scenario.

*Id.* at 930. In light of this disposition, the D.C. Circuit did "not reach the Freedmen's argument that the Cherokee Nation waived its sovereign immunity by filing a related suit in Oklahoma." *Id.* On

3

January 11, 2013, the Freedmen Defendants filed the currently pending motion to transfer or stay. On March 12, 2013, the D.C. Circuit denied the Cherokee Nation's petition for rehearing en banc. (*See* Doc. 188.)

### B.     Current Parties and Claims in the Oklahoma Action

The pleadings raise several claims, counterclaims, and cross-claims. The Cherokee Nation, as the Plaintiff, seeks declaratory relief that descendants of individuals listed on the "Freedmen Roll" do not currently enjoy citizenship rights within the Cherokee Nation. Such relief is sought against five named freedmen defendants.[2] The Cherokee Nation originally also sought relief against the Secretary of the United States Department of the Interior and the United States Department of the Interior ("Federal Defendants") but then voluntarily dismissed its claim. Prior to dismissal of the claim against them, the Federal Defendants asserted a counterclaim against the Cherokee Nation seeking declaratory relief that descendants of individuals listed on the "Freedmen Roll" do currently enjoy citizenship rights within the Cherokee Nation. This counterclaim remains pending.

The Freedmen Defendants asserted a counterclaim against the Cherokee Nation, Principal Chief Bill John Baker ("Principal Chief"), Deputy Chief Principal Chief S. Joe Crittenden, Registrar John Doe, and five Cherokee Nation election officials (collectively "Cherokee Counter-Defendants"). This counterclaim is similar to claims asserted by the Freedmen Plaintiffs in the D.C. action. The Freedmen Defendants allege that deprivation of their citizenship rights violates the U.S. Constitution, the Cherokee Constitution, the Treaty of 1866, and various federal laws. The

---

[2] The Court permitted the Freedmen Plaintiffs in the D.C. action to intervene as freedmen defendants in this case ("Intervening Freedmen Defendants"). Unless necessary for clarification, the named Freedmen Defendants and Intervening Freedmen Defendants are collectively referred to as "Freedmen Defendants."

4

Cherokee Counter-Defendants filed a motion to dismiss, arguing that (1) certain claims are barred by prior orders in the D.C. action, (2) the Cherokee Nation enjoys sovereign immunity,[3] and (3) certain laws relied upon by the Freedmen Defendants do not provide a private right of action.

The Freedmen Defendants have also asserted cross-claims against the Federal Defendants, which are similar to those asserted in the D.C. action. The Freedmen Defendants allege that the Federal Defendants' actions and failures to act in relation to the Freedmens' citizenship violated the U.S. Constitution, violated various federal laws, and constituted a breach of fiduciary duty. The Federal Defendants filed a partial motion to dismiss, arguing that certain laws relied upon by the Freedmen Defendants do not provide a private right of action, that it has no fiduciary duty to the Freedmen Defendants, and that the Freedmen Defendants lack standing to bring any Equal Protection Clause challenge. Upon joint motion of the parties, the Court delayed entering a scheduling order pending ruling on the Cherokee Counter Defendants' Motion to Dismiss and the Federal Defendants' Partial Motion to Dismiss.

## II.     Motion to Transfer

The Freedmen Defendants move the Court to transfer this action to the D.C. Court. The Federal Defendants support the motion, while the Cherokee Nation and Cherokee Counter-Defendants oppose transfer. For reasons explained below, the Court declines to transfer this action pursuant to either "first to file" principles or 28 U.S.C. § 1404(a).

---

[3] The Cherokee Nation argues that its waiver of immunity in this action is limited to the precise declaratory relief sought and does not extend to Freedmen Defendants' counterclaims.

5

### A.     First to File Rule

In *Nash*, the Court summarized general first to file principles:

(1) [A] second-filed court presented with a motion to transfer or stay pursuant to the first to file rule must make the initial determination of whether the first to file rule generally applies, *i.e.*, whether there is sufficient overlap of parties and issues between the two cases; (2) if the second filer argues for application of an equitable exception to the first to file rule, a second-filed court within the Tenth Circuit has discretion to either (a) allow the first-filed court to decide whether an exception applies, or (b) decide for itself whether an exception applies; and (3) there is a preference for allowing the first-filed court to decide whether an exception applies.

*Nash*, 724 F. Supp. 2d at 1167.[4]  At that time, the Court (1) concluded that the rule generally applied due to the similarity of parties and issues; and (2) permitted the D.C. Court to decide whether any exception applied and where the Oklahoma action should proceed. *See id.* at 1168-73.  However, the Court was careful to observe that it was "not refusing to hear the merits, declining to hear the merits, or in any way indicating that it should not ultimately decide the merits" or "making any rulings as to which forum is legally proper and/or will better serve the interests of justice." *Id.* at 1172.  Instead, the Court was "simply deferring to the first-filed forum to determine whether the related actions must and/or should proceed in the ["D.C. Court"], must and/or should proceed simultaneously in two different forums, must and/or should proceed in this Court, or some other formulation." *Id.*

Faced with this question a second time, the Court will no longer defer to the first-filed court for deciding whether the "special circumstances" exception applies or for deciding the proper venue for the Oklahoma action.  Based on the D.C. Circuit's ruling and denial of rehearing, it is now settled that the D.C. action will proceed without the Cherokee Nation.  There is no longer any risk

---

[4] For a more comprehensive explanation of this rule and its exceptions, see *Nash*, 724 F. Supp. 2d at 1164-67.

of this Court entrenching on the decision of whether the Cherokee Nation waived its immunity in the D.C. action by filing this action. Because the D.C. Circuit disposed of the appeal on *Ex parte Young* grounds, this question will not be reached by the district court in the D.C. action. A crucial reason this Court permitted the D.C. Court to act as the "traffic regulator" of the Oklahoma action was to allow that court to decide the immunity waiver question in the first instance. *See Nash*, 724 F. Supp. 2d at 1171 (explaining that "the 'special circumstances' argued by the Cherokee Nation . . . – its immunity in the first-filed forum – may become non-existent if [the D.C. Court] decides that filing of this action functions as a waiver of immunity in the D.C. Action" and declining to "resolve that question prior to the [D.C. Court]"). Now, this concern is moot, and there is no longer any reason to "allow[] the first-filed court . . . to decide the consequences of the Cherokee Nation's decision to file this case while the D.C. Action was still pending." *See id.* at 1172.

Applying the test explained in *Nash*, the Court again concludes that the first to file rule generally applies because (1) the D.C. action was filed first, and (2) there is a similarity of parties and issues. However, the Court now exercises its discretion to reach the "special circumstances" exception and indeed finds that special circumstances trump the first to file rule in this case. The special circumstances are the Cherokee Nation's waiver of immunity in the second-filed lawsuit and successful assertion of immunity in the first-filed lawsuit. The Cherokee Nation has made clear that it intends to waive immunity and seek declaratory relief exclusively in this venue. Thus, upon transfer, it would presumably cease to seek declaratory relief and would re-assert immunity for any pending counterclaims. There would ultimately be no judgment for or against the Cherokee Nation itself, despite the Cherokee Nation's consent to suit in this venue. Under these unique

7

circumstances, the Court finds that immunity in the transferee forum is a special circumstance that overrides the general first to file rule.[5]

The Freedmen Defendants argue that the Cherokee Nation is not actually immune in the transferee forum because it waived immunity as to the "subject matter" by filing this action. However, for the same reasons expressed by United States District Judge Henry H. Kennedy in *Vann III*, the Court concludes that "the principles of tribal sovereign immunity allow [the Cherokee Nation] to bring the Oklahoma action while maintaining its immunity from this suit" and that "a sovereign's interest in immunity encompasses not merely whether it may be sued, but where it may be sued." *Vann III*, 883 F. Supp. 2d at 53-54 (internal quotations omitted), *overruled on other grounds by Vann IV*, 701 F.3d at 930 (declining to reach waiver issue due to its disposition on *Ex parte Young* grounds).[6] In practical effect, the lack of any "subject matter" waiver means that the Cherokee Nation permissibly chose a second federal venue in which to seek declaratory relief, even though similar questions are at issue in the first-filed venue. Whether viewed as a "special circumstances" exception to the first to file rule or a lack of sufficient similarity between the parties, the Cherokee Nation's immunity in the first-filed case renders transfer imprudent. *See generally*

---

[5] The Tenth Circuit has stated that the first court to "obtain jurisdiction" has priority. *See Cessna Aircraft Co. v. Brown*, 348 F.2d 689, 692 (10th Cir.1965) ("The rule is that the first federal district court which obtains jurisdiction of parties and issues should have priority and the second court should decline consideration of the action until the proceedings before the first court are terminated."). The Cherokee Nation continues to argue that this Court was the first to "obtain jurisdiction." As explained in *Nash*, however, identical overlap of parties is not required for application of the first to file rule, and the D.C. Court was the first to obtain jurisdiction over the Principal Chief. Thus, transfer would be *permissible* under the first to file rule. However, this Court simply finds that the Cherokee Nation's absence from that case constitutes special circumstances weighing against transfer.

[6] With respect to the issue of "subject matter" waiver, the Court adopts the reasoning in *Vann III* in its entirety. *See Vann III*, 883 F. Supp. 2d at 53-56.

*Sotheby's Inc. v. Garcia*, 802 F. Supp. 1058, 1065-66 (S.D.N.Y. 1992) (finding "special circumstances" warranted giving priority to the second-filed suit because, *inter alia*, first-filed suit did not include one of the defendants in the second-filed action and such defendant was not amenable to suit in first-filed court). *Cf. O'Hare Int'l Bank v. Lambert*, 459 F.3d 328, 330-31 (10th Cir. 1972) (bank filed first action in Illinois, district court dismissed for lack of personal jurisdiction over defendant, bank appealed, and bank then filed actions in Oklahoma, Texas, and Arkansas during pendency of appeal in order to toll application of state statues of limitations) (holding that Oklahoma court abused its discretion by denying the bank's motion to stay because the bank first elected to proceed in Illinois and was not engaging in vexatious behavior by filing the Oklahoma suit). Here, in contrast to *O'Hare*, there are differences in the actual parties, the alignment of the parties, and the presentation of issues that trump the general rule of deference to the first-filed court.

The Court further observes that, although this case was filed second, this venue is more appropriately suited for reaching a final resolution of the issues. In the D.C. action, the Cherokee Nation will likely seek further appellate review of any declaratory relief entered solely against the Principal Chief. (*See* Cherokee Nation's Resp. to Mot. to Transfer at 5 ("The Chief has no power to change the Nation's Constitution, which now contains a blood requirement. . . . The Chief cannot unilaterally change the Cherokee Constitution, nor can he ignore the holdings of the Cherokee Nation court. It is only a judgment in a court wherein the Nation has inserted itself, and agreed to be bound by the decision, that relief can be afforded.").) Further, there is the possibility of additional litigation regarding enforcement of any judgment, resulting in further delay of final

resolution of the issues. In contrast, in this forum, the Cherokee Nation has consented to a declaration of the Freedmen Defendants' citizenship status.[7]

In sum, the Court (1) exercises its discretion to decide, in the first instance, whether special circumstances trump the first to file rule; (2) concludes that the Cherokee Nation's waiver of immunity in this action and successful assertion of immunity in the D.C. action constitute special circumstances; and (3) declines to transfer under the first to file rule.

### B.     28 U.S.C. § 1404(a)

The Freedmen Defendants and Federal Defendants also move the Court to transfer the action pursuant to 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." This statute is a "federal housekeeping measure, allowing easy change of venue within a unified federal system." *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991) (internal quotation omitted). District courts have discretion to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness. *Id.*

---

[7] The Freedmen Defendants are correct that the Cherokee Nation has asserted sovereign immunity as to the Freedmen Defendants' counterclaims and that this Court will have to address certain immunity issues. Nevertheless, the Cherokee Nation has waived immunity as to at least one central question underlying the parties' dispute, and the Court finds this to be a significant legal difference between the two cases.

The Court declines to transfer pursuant to § 1404(a).[8]  The Court finds that this forum is not inconvenient for any party.  The Freedmen Defendants argue that the Cherokee Nation's selected forum should not be entitled to any deference because the Cherokee Nation's headquarters are located in the Eastern District of Oklahoma.  This argument is dubious, given that much of the Cherokee Nation's land and citizens are located in this district.  This district qualifies as a "home forum" for the Cherokee Nation, and it is certainly more of a home forum than the District of Columbia.  More importantly, this case will likely be decided on the briefs and exhibits, rather than on the basis of a trial.  Thus, the convenience of witnesses is not an important factor.

In arguing for a § 1404(a) transfer, the Freedmen Defendants and Federal Defendants focus on the "interest of justice" prong, arguing that transfer serves the interest of justice because it avoids a duplication of resources and inconsistent judgments.  Ordinarily, the interest of justice is served by transferring a similar case to a first-filed venue in order to avoid duplication, preserve resources, and prevent inconsistent judgments.  *See generally* 15 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice & Procedure* § 3584 (3d ed. 2007) (collecting cases).  However, as explained above, this is a unique case in which the plaintiff seeking declaratory relief in the second-filed forum is immune from suit in the first-filed forum.  Further, this Court has held that immunity in the first forum was not waived upon filing of the second suit.  Under these circumstances, the Court finds that a § 1404(a) transfer is not in the interest of justice, notwithstanding any duplication of resources that may occur.

---

[8] The Court assumes without deciding that this action "might have been brought" by the Cherokee Nation in the D.C. Court, as argued by the Federal Defendants and Freedmen Defendants.  However, the Court declines to transfer for the discretionary reasons explained below.

### III. Motion to Stay

In the event transfer is denied, the Freedmen Defendants and Federal Defendants alternatively move the Court to stay this action pending the outcome of the D.C. action. The Cherokee Nation and Cherokee Counter-Defendants oppose a stay.

A court's power to stay proceedings is "'incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *United Steelworkers of Am. v. Oregon Steel Mills, Inc.*, 322 F.3d 1222, 1227 (10th Cir. 2003) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). "In assessing the propriety of a stay, a district court should consider: whether the defendants are likely to prevail in the related proceeding; whether, absent a stay, the defendants will suffer irreparable harm; whether the issuance of a stay will cause substantial harm to the other parties to the proceeding; and the public interests at stake." *United Steelworkers of Am.*, 322 F.3d at 1227.

The Court declines to stay these proceedings for several reasons. First, the Court has no indication as to whether the Freedmen Defendants and Federal Defendants are likely to prevail in the D.C. court, and this factor is neutral. Second, these defendants will not suffer irreperable harm if this Court proceeds. They may duplicate resources in simultaneously litigating the claims, but this is not irreperable harm. Third, the public interest at stake in this case is a resolution between the Cherokee Nation, the Federal Defendants, and the Freedmen Defendants regarding Freedmens' citizenship rights within the Cherokee Nation. The Cherokee Nation is willing to submit to this Court's jurisdiction to answer this important question, while it will continue to resist enforcement of any judgment rendered in the first-filed forum. Under these circumstances, the Court finds that the public interest is best served by proceeding in this venue. Finally, in the event of simultaneous

litigation, litigating in two forums should not be overly burdensome because the issues will likely be decided based on briefing. Any concerns regarding waste of resources or the risk of inconsistent judgments is outweighed by the Cherokee Nation's waiver of immunity and election to proceed in this forum.

**IV.    Conclusion**

This Court cannot in good conscience transfer or stay the only action in which the Cherokee Nation has consented to resolution of these important issues. Freedmen Defendants' Motion to Transfer, Or in the Alternative, to Stay (Doc. 178) is DENIED.

**SO ORDERED** this 15th day of March, 2013.

_____
**TERENCE C. KERN**
**United States District Judge**